**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **JOSEPH THOMAS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Case No.** |
| **v.** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **BOARD OF REGENTS OF THE** | ) |
| **UNIVERSITY SYSTEM OF** | ) |
| **GEORGIA,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## COMPLAINT

COMES NOW Plaintiff Joseph Thomas ("Thomas" or "Plaintiff"), by and through undersigned counsel, and submits his Complaint against Defendant Board of Regents of the University System of Georgia ("BOR" or "Defendant"), stating as follows:

### I.    NATURE OF COMPLAINT

1.

This is an action by a former employee of Fort Valley State University ("FVSU") to recover for violations of Plaintiff's rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Section 504"), as amended by

the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §12101 et

seq. ("ADAAA"), and the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-

4(d)(2) ("GWA"). Plaintiff is seeking reinstatement, back pay, compensatory

damages, and attorneys' fees to remedy these violations of federal and state law.

## II.    JURISDICTION AND VENUE

2.

This Court has original jurisdiction over Plaintiff's Rehabilitation Act claims

pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343 (civil rights), 28

U.S.C. §§ 2201 and 2202 (declaratory judgment), 29 U.S.C. §794a, 42 U.S.C

§2000e-5(f)(3), and 42 U.S.C §2000d-7 (Rehabilitation Act).

3.

This Court has supplemental jurisdiction over Plaintiff's GWA claim pursuant

to 28 U.S.C. 1367 because that claim arises out of the same transaction or occurrence

as the federal counts within the Court's original jurisdiction.

4.

 Venue is proper in this district and division pursuant to 28 U.S.C. § 1391

because Defendant is located in this district and division.

### III.   NOTICE OF CLAIMS

5.

Plaintiff served an ante litem notice of claims pursuant to O.C.G.A. § 50-21-26 on the Georgia Department of Administrative Services, Risk Management Services and the Board of Regents of the University System of Georgia on May 28, 2021. A true and correct copy of the notice, with return receipts attached, is attached hereto as **Exhibit A**.

6.

The Georgia Department of Administrative Services failed to respond to Plaintiff's ante litem notice within 90 days.

7.

Plaintiff commences this action after more than 90 days have elapsed after the presentation of the notice of claim without action by the Department of Administrative Services, in accordance with O.C.G.A. § 50-21-26(b)

### IV.   PARTIES

8.

Plaintiff is a legal resident and citizen of the United States and of the State of Georgia. During the relevant time period, Plaintiff was an employee of FVSU, a unit of the University System of Georgia.

9.

Plaintiff is and, at all times relevant hereto, was an individual with a disability within the meaning of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 705(9) (B) and (20)(B), which incorporates by reference the standards of the Americans with Disabilities Act, as amended in 2008 ("ADAAA").

10.

Plaintiff has a Section 504 disability as defined in the ADAAA at 42 U.S.C. §12102 (1)(A) in that he has, since 2015, had a physical impairment that substantially limits him in one or more major life activities or major bodily functions, including cardiovascular functions.

11.

In addition, or alternatively, Plaintiff has a Section 504 disability as defined in the ADAAA at 42 U.S.C. §12102(A) and 42 U.S.C. §12102 (4)(E)(I) in that he has, since 2015, had physical impairments that, without regard to the ameliorative effects of mitigating measures such as medication, surgery and surgical corrections, substantially limit him in one or more major life activities or major bodily functions, including his cardiovascular functions.

12.

In addition, or alternatively, Plaintiff has a Section 504 disability as defined

in the ADAAA at 42 U.S.C. §12102(B) in that he has, since 2015, had a record of one or more physical impairments that substantially limit him in one or more major life activities or major bodily functions, including his cardiovascular functions.

13.

In addition, or alternatively, Plaintiff satisfies the requirements for being "regarded as disabled" as defined in the ADAAA at 42 U.S.C. §§12102(1) and (3) and incorporated into the Rehabilitation Act, in that he has had an actual or perceived physical impairment (coronary artery disease) since 2015.

14.

At all relevant times, Plaintiff was and is a "qualified individual" as defined by 42 U.S.C. §12111(8) of the ADAAA and §504 of the Rehabilitation Act because he was able to perform the essential functions of his position as a Project Manager at FVSU with or without reasonable accommodation.

15.

Defendant administers all public universities in the State of Georgia, including FVSU.

16.

Defendant is an entity subject to suit with its principal place of business located at 270 Washington Street SW, Atlanta, GA 30334.

17.

Defendant may be served by delivering process to Mr. Edward Tate, Vice Chancellor of Legal Affairs, University System of Georgia, at 270 Washington Street SW, Atlanta, GA 30334.

18.

FVSU is a unit of Defendant subject to Defendant's management and operational control.

19.

Defendant, and FVSU by extension, constitute programs or activities receiving federal financial assistance as defined by the Rehabilitation Act, 29 U.S.C. § 794(b).

20.

As a recipient of federal funding, Defendant, and by extension FVSU, are subject to the requirements of Section 504, including the requirement that they not subject otherwise qualified individuals with disabilities to discrimination on the basis of disability.

21.

Defendant, and by extension FVSU, is an "employer" within the meaning of the ADAAA, 42 U.S.C. § 12101 *et seq.*, as incorporated by the Rehabilitation Act

29 U.S.C. § 794(d), because it has engaged in commerce or in an industry affecting commerce within the meaning of the ADAAA and has employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

## V.    FACTUAL ALLEGATIONS

22.

Thomas worked for FVSU between 2015 and October 2020.

23.

Thomas was initially hired by FVSU's then Director of Facilities Management and Plant Operations, Dr. Crew, to serve as a Project Manager responsible for overseeing construction projects on FVSU's campus.

24.

When Crew was let go in 2017, Thomas was appointed Interim Director of Facilities and served in this role for approximately one year.

25.

FVSU then hired another permanent director, who was terminated shortly thereafter. Thomas was once again appointed Interim Director of Facilities and served in this role until FVSU hired the current director, Ed Dufresne, in 2019.

26.

FVSU's appointment of Thomas as interim director on two separate occasions speaks to Thomas's stellar performance with FVSU.

27.

Thomas and Dufresne had a good working relationship until the Spring of 2020, when Thomas first sought reasonable accommodations for a known disability.

28.

Thomas has a serious heart condition that makes him particularly vulnerable to COVID-19.

29.

Specifically, Mr. Thomas was diagnosed with coronary artery disease in December 2015. At that point, he underwent a quadruple bypass heart surgery. Mr. Thomas also had three stints implanted in 2016.

30.

Early on during the COVID-19 pandemic, the Centers for Disease Control and Prevention ("CDC") advised the public that individuals with coronary artery disease are particularly vulnerable to COVID-19 because they are more likely to get severely ill from the virus. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

31.

In March 2020, Thomas's doctor similarly advised Thomas that he was particularly vulnerable to COVID-19 because of his preexisting condition and advised him to work remotely during the height of the pandemic.

32.

Thomas subsequently submitted a request to FVSU for reasonable accommodations in the form of remote work.

33.

Thomas provided two supporting doctor's notes confirming the medical need for remote work in March and May of 2020.

34.

Dufresne denied Thomas's request for accommodation even though numerous other employees in similar positions were allowed to work remotely.

35.

Dufresne expressed frustration at Thomas's request and told him that he would have to use his accrued PTO to go on leave if he did not want to work on site.

36.

Thomas complied with his supervisor's instruction and utilized all of his accrued PTO from around April to July 2020 as medical leave.

37.

When Thomas returned from his medical leave in July 2020, his relationship with Dufresne noticeably changed. Dufresne excluded Thomas from various projects and made it exceedingly clear that he disapproved of Thomas's medical leave.

38.

In August 2020, FVSU experienced a serious gas leak.

39.

Thomas, who was a member of the emergency management team, received the first call about the leak. He then immediately called the on-site plumber who had the requisite tools to turn off the gas, the police department, and the fire department.

40.

When Thomas arrived at the scene, the gas was still on and the plumber was nowhere to be seen. After making several calls, Thomas learned that Dufresne had removed the tools needed to turn off the gas from the plumber's maintenance vehicle the day before without the plumber's knowledge.

41.

It took a whopping forty-five minutes for FVSU to turn off the gas.

42.

The following day, Thomas brought up the gas leak fiasco at a Zoom staff

meeting. Thomas complained that a 45-minute delay in turning off the gas during an active gas leak was completely unacceptable and dangerous.

43.

Thomas disclosed various deficiencies in the response to the gas leak and objected that the department's failure to adequately respond to the gas leak violated state and federal safety laws.

44.

Dufresne was visibly upset with Thomas for highlighting the department's safety breaches and later told at least three other staff members as soon as Thomas had disconnected from the call that he was going to terminate Thomas.

45.

One week later, Dufresne informed Thomas that he would be terminated effective October 31, 2020. Dufresne claimed that the termination was in connection with a "reduction in force," but provided no other details.  He told Thomas to immediately surrender his work tools and ID badge and to go on paid leave until the effective termination date.

46.

FVSU terminated Plaintiff's employment on October 31, 2020.

47.

Shortly after Thomas was terminated, FVSU advertised six open positions in Thomas's department—including Thomas's position—on Indeed.com and FVSU's website.

48.

FVSU's recruitment for these positions directly belies Dufresne's contention that Thomas was laid off due to a reduction in force. The proffered reason for Thomas's termination is false and pretextual.

49.

Defendant's actions, by and through FVSU's officers and managers, were done intentionally, willfully and in a bad faith violation of Plaintiff's rights under the Rehabilitation Act and the GWA.

50.

The effect of the above-stated actions has been to deprive Plaintiff of employment opportunities, income in the form of wages, prospective employment benefits, including social security and other benefits to which he would have been entitled but for these illegal actions.

51.

At the time of his termination, Thomas was less than six months away from

having his lifetime retirement benefits with the State of Georgia vest. By unlawfully terminating Thomas, Defendant deprived Thomas of these lifetime retirement benefits.

52.

The effect of Defendant's above-stated actions, by and through FVSU's officers and managers, has also caused Plaintiff out-of-pocket losses, including attorney's fees and mental and emotional distress for which he seeks compensation.

## COUNT ONE
## VIOLATION OF THE REHABILITATION ACT – DISABILITY DISCRIMINATION

53.

Plaintiff incorporates by this reference all of the preceding paragraphs of the Complaint.

54.

At all times relevant hereto, Defendant has been subject to the requirements of Section 504 of the Rehabilitation Act as amended by the ADAAA.

55.

At all times relevant hereto, Plaintiff has had a disability and/or record of disability as defined under the Rehabilitation Act.

56.

Moreover, at all times relevant hereto, Plaintiff has been a qualified individual with a disability as that term is defined under the Rehabilitation Act in that he was able to perform the essential functions of his job either with or without accommodation.

57.

At all times relevant hereto, Defendant, through the officers and managers at FVSU, was aware of Plaintiff's disability and/or record of disability and his ability to perform his job with or without accommodations.

58.

Despite his ability to perform his job with or without accommodation, Plaintiff was fired, which termination was done on account of Plaintiff's disability and in order to avoid further accommodation of Plaintiff's disability.

59.

Defendant's actions, by and through the officers and managers at FVSU, amount to a violation of Section 504 of the Rehabilitation Act, which prohibits discrimination on the basis of disability in any program that is the recipient of Federal funding.

60.

As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

61.

In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT TWO
### VIOLATION OF THE REHABILITATION ACT –
### INTERFERENCE AND RETALIATION

62.

Plaintiff incorporates by this reference all of the preceding paragraphs of the Complaint.

63.

At the time of his termination, Plaintiff had a disability and/or record of disability as defined by Section 504 of the Rehabilitation Act.

64.

While working for FVSU, Plaintiff was entitled to reasonable accommodations for his disability under Section 504 of the Rehabilitation Act.

65.

Defendant interfered with Thomas's right under Section 504 of the Rehabilitation Act to request reasonable accommodations for his disability when it terminated his employment in retaliation for requesting reasonable accommodations.

66.

Defendant's actions violated 42 U.S.C. §12203(b) of the ADA as incorporated in Section 504 of the Rehabilitation Act which prohibits interference, coercion or intimidation of an individual for exercising rights under the ADA and Section 504.

67.

Defendants acted negligently or with reckless indifference to Plaintiff's rights under the Rehabilitation Act by the conduct outlined above, despite the ADA and the Rehabilitation Act's clear prohibition on interfering with, coercing, threatening or intimidating employees for exercising their right to reasonable accommodation or forprotesting discrimination on the basis of disability.

68.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

69.

In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT THREE
### VIOLATION OF THE GEORGIA WHISTLEBLOWER PROTECTION ACT

70.

Plaintiff incorporates by this reference all of the preceding paragraphs of the Complaint.

71.

The Georgia Whistleblower Protection Act provides the following prohibitions against retaliation against employees who complain of misconduct by public employers:

(2) No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity.

(3) No public employer shall retaliate against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation.

O.C.G.A. § 45-1-4(d).

72.

In August 2020, Thomas complained to his supervisor about FVSU's faulty response to a serious gas leak. Thomas disclosed various deficiencies in the response and objected that the department's failure to adequately respond to the gas leak violated state and federal safety laws.

73.

Thomas's complaints about FVSU's faulty response to the gas leak constituted protected conduct under O.C.G.A. § 45-1-4 both because (i) Thomas disclosed violations of or noncompliance with state and federal safety laws, rules, and regulations to a supervisor and (ii) because Thomas objected to, and refused to participate in, activities, policies, or practices of FVSU that he had reasonable cause

to believe are a violation of or noncompliance with state and federal safety laws, rules, and regulations.

74.

A mere week after Thomas's protected conduct, Dufresne informed Thomas that he would be terminated effective October 31, 2020, in connection with a "reduction in force" and instructed Thomas to go on leave until the effective termination date.

75.

The proffered reason for Thomas's termination ("reduction in force") was false and pretextual.

76.

Shortly after Thomas was terminated, FVSU advertised six open positions in Thomas's department—including Thomas's position—on Indeed.com and FVSU's website. FVSU's recruitment for these positions directly belies Dufresne's contention that Thomas was laid off due to a reduction in force.

77.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits,

including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

78.

In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

79.

Defendant's actions with respect to Thomas were reckless and taken in willful disregard of the probable consequences of their actions.

## **RELIEF**

Plaintiff requests the following relief:

(a)    judgment in favor of Plaintiff and against Defendant on all counts for its unlawful employment practices;

(b)    damages sufficient to make Plaintiff whole by providing for out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(c)     reinstatement or front pay in lieu of reinstatement;

(d)     equitable restitution and relief sufficient to cover life, disability, or health insurance and any lost retirement benefits due to Defendant's wrongful termination of Plaintiff's employment;

(e)     compensatory damages for Plaintiff's mental and emotional distress incurred as a result of Defendant's unlawful actions;

(f)     reasonable attorney's fees and costs; and

(g)     such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Date: September 13, 2021.

Respectfully submitted,

**BERGMAR LAW LLC**

*/s/ Nina Maja Bergmar*
Nina Maja Bergmar
Georgia Bar No. 982879
135 Auburn Ave. NE, Ste. 210
Atlanta, GA 30303
nmb@bergmarlaw.com
Tel. (470) 239-2096
Fax. (404) 806-8696

Attorney for Plaintiff

# EXHIBIT A

# BERGMAR LAW

— PROTECTING WORKERS' RIGHTS —

Nina Maja Bergmar, Esq.                                    Tel.: (470) 239-2096
135 Auburn Ave. N.E., Suite 210                          nmb@bergmarlaw.com
Atlanta, GA 30303                                        www.bergmarlaw.com

May 26, 2021

**VIA CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED,**
**AND ELECTRONIC MAIL**

Mr. Wade Damron, Director                    **NOTICE OF CLAIM PURSUANT TO**
Department of Administrative Services         **O.C.G.A. § 50-21-26**
Risk Management Services
200 Piedmont Avenue SE
Suite 1220, West Tower
Atlanta, Georgia 30334
Wade.Damron@doas.ga.gov
Risk.Management@doas.ga.gov

Mr. Edward M. Tate
Vice Chancellor of Legal Affairs / Secretary to the Board of Regents
Board of Regents of the University System of Georgia
270 Washington Street, SW
Atlanta, GA 30334
usg-legal@usg.edu
Edward.tate@usg.edu

Re:     *Joseph Thomas v. Fort Valley State University, Board of Regents of the University*
        *System of Georgia*

Dear Mr. Damron and Mr. Tate:

I represent Mr. Joseph Thomas in connection with his termination from Fort Valley State
University ("FVSU"). The purpose of this letter is to notify you, pursuant to O.C.G.A. § 50-21-
26, of claims that Mr. Thomas has against you for age and disability discrimination under the
Georgia Fair Employment Practices Act of 1978, O.C.G.A. §§ 45-19-29, et seq., and retaliation
under the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4(d).

**TIME AND LOCATION OF THE OCCURRENCE, STATE AGENCY**

The occurrence out of which your liability arises is FVSU's termination of Mr. Thomas's
employment, effective October 31, 2020. Mr. Thomas was notified of the termination in August
2020 in a meeting with FVSU's Director of Facilities Management and Plan Operations (Ed

Dufresne), VP of Human Resources (Teneka Battle), and Chief Financial Officer (Michelle Martin). All events discussed herein occurred on FVSU's campus.

FVSU is a public land-grant university in Fort Valley, Georgia, and is part of the University System of Georgia. The claims set forth herein are therefore asserted against the Board of Regents of the University System of Georgia.

### NATURE OF THE LOSS SUFFERED

This is a case of unlawful employment discrimination and retaliation. The acts and omissions of FVSU have caused Mr. Thomas both pecuniary and non-pecuniary damages. The pecuniary damages include loss of pay, loss of employment benefits, and loss of lifetime retirement benefits. The non-pecuniary damages include emotional distress damages incurred as a result of FVSU's intentional discrimination and retaliation. Mr. Thomas is also seeking attorney fees and costs.

### AMOUNT OF THE LOSS CLAIMED

The monetary loss in this case falls into three categories: pecuniary, emotional, and attorney fees and costs.

### Pecuniary Losses

The pecuniary losses include loss of pay, loss of benefits coverage, and loss of pension. Prior to his termination, Mr. Thomas earned an annual salary of $62,510. Due to Mr. Thomas's age, it will be very difficult for him to find new, comparable employment. While Mr. Thomas's back pay will continue to accrue pending the litigation of this matter, we estimate for purposes of this letter that Mr. Thomas will be entitled to at least two years of back pay and two years of front pay in lieu of reinstatement. Accordingly, Mr. Thomas is seeking approximately $250,040 in loss in pay.

At the time of his termination, Mr. Thomas was just a few months away from completing his tenth year of employment with the State of Georgia and thus being fully vested in the state's retirement plan. Under the plan, Mr. Thomas would have been entitled to lifetime retirement benefits, disability benefits, and death benefits, including lifetime health insurance benefits for Mr. Thomas and continued health insurance benefits for his spouse upon his death. Mr. Thomas lacks knowledge of the total value of the vested pension and benefits; however, we estimate the total value to be approximately $300,000.

### Emotional Losses

The remaining losses can be defined as emotional damages, which we have calculated to be approximately $150,000.

Page 3 of 5
Joseph Thomas Notice of Claim

Attorney Fees and Costs

Mr. Thomas is also seeking reasonable attorney fees and costs. Attorney fees will continue to accrue until trial and thus cannot be established at this time. However, Mr. Thomas is likely to incur approximately $250,000 in attorney fees and costs in connection with this matter should it proceed to trial.

Accordingly, we estimate the total amount of liability to be approximately $950,040.

## ACTS OR OMISSIONS CAUSING THE LOSS

Mr. Thomas has worked for the State of Georgia in different capacities since June 2011. He most recently worked as a Project Manager at FVSU from 2015 until October 2020. As such, he was responsible for overseeing construction projects on FVSU's campus.

Mr. Thomas was initially hired by FVSU's then Director of Facilities Management and Plant Operations, Dr. Crew. When Dr. Crew was let go in 2017, Mr. Thomas was appointed Interim Director of Facilities and served in this role for approximately one year. FVSU then hired another permanent director, who was terminated shortly thereafter. Mr. Thomas was once again appointed Interim Director of Facilities and served in this role until FVSU hired the current director, Ed Dufresne, in 2019. FVSU's appointment of Mr. Thomas as interim director on two separate occasions speaks to Mr. Thomas's stellar performance with the university.

Mr. Thomas and Mr. Dufresne had a good working relationship until the Spring of 2020, when Mr. Thomas first sought reasonable accommodations for a known disability. Mr. Thomas has a serious heart condition that makes him particularly vulnerable to COVID-19. He therefore requested permission to work remotely during the height of the pandemic at the recommendation of his cardiologist. Mr. Dufresne denied Mr. Thomas's request for accommodation even though numerous other employees were allowed to work remotely. Mr. Dufresne expressed frustration at Mr. Thomas's request and told him that he would have to use his accrued PTO to go on leave if he did not want to work on site. Mr. Thomas complied with his supervisor's instruction and utilized all of his accrued PTO from around April to July 2020.

While Mr. Thomas was technically out on sick leave (exhausting his PTO) from April to July, he continued to work from home during that time period. Mr. Thomas took phone calls, completed paperwork, and even visited jobsites in the evening when most students had left for the day. Mr. Dufresne was well aware that Mr. Thomas was working during his "leave" and encouraged him to do so.

When Mr. Thomas officially returned from his sick leave in July 2020, his relationship with Mr. Dufresne noticeably changed. Mr. Dufresne excluded Mr. Thomas from various projects and made it exceedingly clear that he disapproved of Mr. Thomas's medical leave.

In August 2020, FVSU experienced a serious gas leak. Mr. Thomas, who was a member of the emergency management team, received the first call about the leak. He then immediately called the on-site plumber who had the requisite tools to turn off the gas, the police department, and the

Page 4 of 5
Joseph Thomas Notice of Claim

fire department. When Mr. Thomas arrived at the scene, the gas was still on and the plumber was nowhere to be seen. After making several calls, Mr. Thomas learned that Mr. Dufresne had removed the tools needed to turn off the gas from the plumber's maintenance vehicle the day before without the plumber's knowledge. As a result, it took a whopping forty-five minutes for FVSU to turn off the gas.

The following day, Mr. Thomas brought up the gas leak fiasco at a Zoom staff meeting. Mr. Thomas emphasized that a 45-minute delay in turning off the gas during an active gas leak was completely unacceptable and dangerous. He noted that the faulty response violated various safety rules, protocols, and regulations. Mr. Dufresne was visibly upset with Mr. Thomas for highlighting the department's safety breaches and later told at least three other staff members that he was going to terminate Mr. Thomas.

One week later, Mr. Dufresne informed Mr. Thomas that he would be terminated effective October 31, 2020. Mr. Dufresne claimed that the termination was in connection with a "reduction in force," but provided no other details. He told Mr. Thomas to immediately surrender his work tools and ID badge and to go on paid leave until the effective termination date.

Shortly after Mr. Thomas was terminated, FVSU advertised six open positions in Mr. Thomas's department—including Mr. Thomas's position—on Indeed.com and FVSU's website. FVSU's recruitment for these positions directly belies Mr. Dufresne's contention that Mr. Thomas was laid off due to a reduction in force. Upon information and belief, Mr. Thomas has been replaced by a substantially younger individual.

The record shows that the proffered reason for Mr. Thomas's termination is false and pretextual. FVSU's actions have given rise to significant liability for retaliation under the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4(d)(2)-(3), and retaliation and discrimination based on age and disability under the Georgia Fair Employment Practices Act, O.C.G.A. § 45-19-29.

Mr. Thomas now has actionable claims for lost wages, benefits, and other remuneration, other compensatory damages, and reasonable attorney's fees and costs. Mr. Thomas intends to avail himself of all remedies available to him under the law.

Mr. Thomas has filed a timely charge of discrimination with the Georgia Commission on Equal Opportunity, as required for his claims of age and disability discrimination. Mr. Thomas will file a Whistleblower Protection Act claim in Fulton County Superior Court.

Given the liability of the State in this matter, I would encourage you to promptly complete any necessary due diligence and compensate Mr. Thomas for the pecuniary and non-pecuniary damages he has suffered as a result of FVSU's actions.

Should you wish to discuss this matter, I ask that you contact me directly as Mr. Thomas's counsel. If, after ninety days, I have not heard from you, I will assume that you have no interest in resolving these claims short of litigation.

Page 5 of 5
Joseph Thomas Notice of Claim


I look forward to speaking with you.


Sincerely,

Nina Maja Bergmar

cc:    Joseph Thomas





**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Board of Regents of the
University System of Georgia
Attn: Edward Tate
270 Washington Street SW
Atlanta GA 30334

9590 9402 5014 9063 1975 55

2. Article Number (Transfer from service label)

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Erika Triplett   ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Erika Triplett   6-2-2021

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt